# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TYSON ERDMANN, <br> JOHN KING, <br> ROBERT WILLIAMSON, <br> SEAN MURPHY, <br> KENNETH GILMORE, <br> TRAVIS SYBESMA, <br> WILLIAM DUGGAN, <br> IVAN GILL, <br> SALVATORE RAO, <br> SCOTT CANINO and <br> HANS MEASLEY, <br><br> Plaintiffs, <br><br> v. <br><br> 3M COMPANY, and <br> AEARO TECHNOLOGIES, LLC., <br><br> Defendants. | C.A. No. |

## COMPLAINT AND JURY DEMAND

This Complaint is brought by the Plaintiffs Tyson Erdmann, John King, Robert Williamson, Kenneth Gilmore, Tom Ditomasso, Travis Sybesma, William Duggan, Ivan Gill, Salvatore Rao, Dave DiCicco, Scott Canino and Hans Measley (collectively the "Plaintiffs"), against the Defendants 3M Company ("3M") and Aearo Technologies, LLC ("Aearo") (collectively the "Defendants") for their manufacturing and sale of defective earplugs, causing permanent and significant hearing loss and damage to the Plaintiffs.

### PARTIES

1. Plaintiff, Tyson Erdmann, is an individual residing in Mansfield, Massachusetts.

2. Plaintiff John King is an individual residing in Salado, Texas.

3. Plaintiff Robert Williamson is an individual residing in North Attleboro, Massachusetts.

4. Plaintiff Sean Murphy is an individual residing in Dracut, Massachusetts.

5. Plaintiff Kenneth Gilmore is an individual residing in Arlington, Washington.

6. Plaintiff Tom DiTomasso is an individual residing in Rockwood, Maine.

7. Plaintiff Travis Sybesma is an individual residing in Bend, Oregon.

8. Plaintiff William Duggan is an individual residing in Maynard, Massachusetts.

9. Plaintiff Ivan Gill is an individual residing in Naples, Florida.

10. Plaintiff Salvatore Rao is an individual residing in North Providence, Rhode Island.

11. Plaintiff Scott Canino is an individual residing in Whitefish, Montana.

12. Plaintiff Hans Measley is an individual residing in Richmond, Rhode Island.

13. Defendant, 3M Company is a Delaware corporation with its principal place of business in St. Paul, Minnesota.

14. Defendant Aearo Technologies, LLC. is a Delaware limited liability company with its principal place of business in Indiana and is a wholly owned subsidiary of Defendant 3M Company.

**JURISDICTION**

15. Jurisdiction is properly placed in this Court pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interests and costs, and there is diversity of citizenship between Plaintiffs and Defendants.

16. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred in this judicial district and Defendant corporations are subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

14. Plaintiffs were all employed with the U.S. Military between the years of 2003 and 2012.

15. During their training and deployment on active military duty, Plaintiffs used Defendants' dual-ended Combat Arms Earplugs (the "Earplugs") for ear protection during live combat and weapons firing.

16. Thus, the Plaintiffs were exposed to loud impulse noises and explosions while wearing the Earplugs.

17. The Plaintiffs all suffer from severe diminished hearing loss and tinnitus to varying degrees.

18. Aearo Technologies developed, marketed, and sold the Combat Arms Earplugs until its acquisition by 3M in 2008.

19. Following the acquisition, 3M operated Aearo as a wholly owned subsidiary and the Combat Arms Earplugs have been marketed and sold under the 3M brand.

20. Because 3M wholly acquired the assets and liabilities of Aearo, all claims herein are allegations against both Aearo and 3M.

21. Aearo developed dual ended Combat Arms Earplugs for the specific purpose of providing military service members with one pair of earplugs that they could use in two different ways.

22. The Earplugs can be worn in an open position to block loud impulse sounds while still maintaining the ability to hear other sounds such as the voices of those talking around them (the "Green End").

23. The Earplugs can also be worn in a closed position whereby virtually all sounds are reduced (the "Yellow End").

24. The Defendants won a series of Indefinite-Quantity Contracts with the military to be the exclusive supplier to the U.S military between 2003 and 2012, by representing the Combat Earplugs as meeting specific performance criteria established by the U.S. Government.

25. Based on information and belief, Defendants' representations regarding the performance criteria and the safety of the Earplugs were false, and Defendants knew them to be false.

26. Based on information and belief, the Earplugs had a dangerous design defect whereby they would loosen in the wearer's ear and allow damaging sounds to enter the ear canal, regardless of which end of the Earplug is inserted into the wearer's ear.

27. Based on information and belief, Aearo learned of the defect when it conducted testing, and the Earplugs even failed the first specification testing in February 2000.

28. The U.S. Military is only permitted to purchase earplugs that meet the testing standards established by the U.S. Army Public Health Command, Army Hearing Program, or an equivalent standard.

29. Based on information and belief, Aearo manipulated the conditions and protocol of its Noise Reduction Rating to achieve favorable hearing protection results and did so in violation of the relevant ANSI S3.19-1974 testing protocol.

30. Around January 2000, Aearo began the necessary Noise Reduction Rating ("NRR") testing but did so exclusively in-house. Based on information and belief, this testing consisted of a sample size of ten subjects, some of which were Aearo employees, and was monitored by Aearo employees who were able to stop the testing at any time convenient.

31. Based on information and belief, Aearo stopped the testing of the Green End of the Earplug prior to the testing of all subjects because of poor NRR results due to a design defect in the Earplugs. To achieve better results without remedying the defect, Aearo simply completed the rest of the testing using the other side of the Earplug and asserted that NRR as that of the Green End NRR.

32. Based on information and belief, the testing of the Earplugs was so manipulated that the testing of the Yellow End resulted in an NRR of -2, which falsely suggested that the Earplugs actually amplified sound.

33. Based on information and belief, rather than rectify the clear defect or repeat the testing, Aearo simply changed the NRR to an optimal result of 0.

34. Based on information and belief, Aearo conducted an investigation into the cause of the poor test results from the Green End and discovered that the stem was too short and that the Earplug, when worn both ways, loosened such that it did not effectively fit the wearer's ear and did not properly seal the ear canal as required by ANSI S3.19-1974, Section 3.2.3.1.

35. Aearo further manipulated testing of the Green End by instructing the test subjects to fold the earplug in a specific way that was not noted on any of the earplug packaging or instructions.

36. Aearo did not re-test the Yellow End using the manipulated fitting instructions because it knew that it would not be able to obtain a 0 NRR.

37. Given the low NRR ratings, Aearo knew that, if not fitted correctly, the Earplugs would not guard against loud impulse noises and could cause hearing loss and tinnitus.

38. The 0 NRR was important to Aearo because it was a major selling point to the U.S. military, whom they hoped to contract with.

39. The defect in the Earplugs was not discovered by the U.S. Military for over a decade, as it was imperceptible to the wearer.

40. In Aearo's bid to the U.S. Military, Aearo asserted that the Earplugs complied with the Salient Characteristics of the Medical Procurement Item Description that were required for all bids, despite knowing that the certification was false.

41. Such characteristics required that the Earplugs were free from all defects that impair their serviceability, and that illustrated instructions explaining the proper use and handling of the Earplugs be supplied along with the product.

42. Aearo falsely certified that the Earplugs were fully compliant with all criteria.

43. Aearo at no point provided accurate instructions along with the Earplugs and knew that the product was defective from its own testing.

44. Instead, Aearo falsely reported favorable NRR results and hearing protection to the U.S. military and did not disclose the known modified fitting instructions that were necessary to achieve the necessary hearing protection.

45. Because of these false assertions, Aearo was awarded the bid for the ICQ and rec-certified that the Earplugs met the criteria in subsequent years, despite knowing that they did not.

46. Aearo and 3M continued to sell the Earplugs, despite knowing of the defects, until 2015, when they were discontinued.

47. The Plaintiffs only learned of this conduct by Aearo and 3M, the efficacy of the Earplugs, and the cause of their respective injuries in the past 3-4 months as a result of publicity surrounding other actions against 3M and Aearo.

## CLAIMS FOR RELIEF
### COUNT I
### Strict Products Liability- Design Defect

48. Plaintiffs repeat and incorporate by reference all of the facts alleged in the above paragraphs as if set forth in full herein.

49. Defendants are the manufacturers and sellers of the defective Earplugs.

50. The Earplugs that the Defendants manufactured, distributed, and sold were defectively designed because the design of the earplug caused it to loosen in the wearer's ear, which allowed damaging sounds to enter the ear canal.

51. The Earplugs were defectively designed at the time they left the Defendants' control.

52. The defective Earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective and unreasonably dangerous for their ordinary and expected use because they did not stop the damaging loud noises of military use that can cause hearing loss or tinnitus.

53. The defective Earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective and not reasonably safe for its intended use.

54. Defendants knew of the defect in the Earplugs.

55. No reasonably prudent manufacturer would design, distribute, and sell an earplug with knowing that the stem of the Earplug was too short to fit correctly in many people's ears and

7

that if not fitted correctly, the Earplugs would not guard against loud impulse noises, causing hearing loss and tinnitus.

56. The defective Earplugs that the Defendants manufactured, distributed, and sold were delivered to the Plaintiffs without any change in their defective condition and were used by Plaintiffs in the manner expected and intended.

57. Defendants owed a duty of care to Plaintiffs to design, manufacture, and sell earplugs that met the relevant performance criteria and were otherwise fit for use by military servicemen to protect them from damaging noises typically incurred in military service.

58. Defendants breached this duty.

59. Defendants owed a duty of care to Plaintiffs to design and sell earplugs that were fit for use in military service and that performed according to the specifications that Defendants certified the Earplugs would meet.

60. Defendants breached this duty.

61. Defendants owed a duty of care to Plaintiffs to design and sell earplugs that were safe when used for their intended purpose.

62. Defendants breached this duty.

63. Plaintiffs suffered injuries and damages as a direct and proximate result of the defective and unreasonably, unsafe, dangerous condition of the Earplugs that the Defendants manufactured, distributed, and sold.

## COUNT II
### Strict Products Liability- Failure to Warn

64. Plaintiffs repeat and incorporate by reference all of the facts alleged in the above paragraphs as if set forth in full herein.

65. Defendants are the manufacturers and sellers of the defective Earplugs.

66. The defective Earplugs that the Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective because the Earplugs did not come with adequate warnings, instructions, or labels.

67. The defective Earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective because Defendants failed to warn, failed to provide instructions, and failed to provide an adequate label that included the modified fitting instructions necessary for the earplug to fit correctly in the wearer's ear and create the seal necessary to block out the damaging sounds.

68. Defendants had a duty to manufacture, design, and sell the Earplugs with reasonable and due care for the safety and well-being of wearers, including the Plaintiffs.

69. Defendants breached that duty.

70. Defendants had a duty to provide adequate warnings and/or instructions to prevent the risks associated with the Earplugs when worn in the ordinary course.

71. Defendants breached that duty.

72. It was foreseeable to the Defendants that the Earplugs would be unreasonably dangerous if distributed without warnings in regard to the risks of damage to the ear with an improper fit, or any modified fitting instructions.

73. The risk of damage if distributed was foreseen by Defendants, as the Defendants discovered during testing that because the stem of the earplug was so short, it was difficult to insert the earplug deep enough into the wearer's ear canal to obtain a proper fit.

74. Defendants also discovered that when the green end of the Earplugs was inserted into the ear using the standard fitting instructions, the Earplug loosened, often imperceptibly to the wearer, and that this same problem occurred when the Earplugs were reversed.

75. Defendants had a post-sale duty to warn of the above alleged product-related defects and risks because Defendants knew or reasonably should have known that the Earplugs posed a substantial risk of harm to military servicemen, including Plaintiffs, because *inter alia*; the servicemen who used the earplug can reasonably be assumed to be unaware of the risk of harm caused by the above-alleged defects because said defects were imperceptible; a warning or instruction showing how to correctly and safely use the earplug could have been effectively communicated to and acted upon by the servicemen to whom a warning or instruction might be provided; and the risk of harm, including but not limited to hearing loss in servicemen, is sufficiently great to justify the slight burden of providing a warning or instruction.

76. Defendants breached this duty by failing to provide a post-sale warning or instruction.

77. The Earplugs did not provide adequate warnings or instructions as to the risk that the Earplugs would allow damaging sounds in, thereby posing a serious and unknown risk to the Plaintiffs' hearing.

78. The warnings and instructions that accompanied the Earplugs failed to provide the level of information that an ordinary wearer would expect when using the Earplugs in a manner reasonably foreseeable to Defendants.

79. Had Plaintiffs received a proper or adequate warning as to the risks associated with the use of the Earplugs in the manner contemplated by Defendants, they would not have used them.

80. Had the Plaintiffs received the modified and undisclosed fitting instructions that were used by Defendants during the testing, Plaintiffs would have followed the modified fitting instructions to ensure a proper seal and prevent damage.

81. Plaintiffs suffered injuries and damages as a direct and proximate result of the Defendants' failures to warn or provide adequate instructions regarding the dangerous condition of the Earplugs that the Defendants manufactured, distributed, and sold.

### COUNT III
### Negligence

82. Plaintiffs repeat and incorporate by reference all of the facts alleged in the above paragraphs as if set forth in full herein.

83. Defendants had a duty to each exercise the degree of skill and learning ordinarily used under the same or similar business by a person or entity in Defendants' business of designing, developing, testing, manufacturing, marketing, and distributing hearing protection devices.

84. Defendants further had a duty to comply with the certifications made to the U.S. government about the qualities and performance characteristics of the Earplugs.

85. Plaintiffs are among the class of persons designed to be protected by these regulations and certification standards and, as such, were foreseeable plaintiffs to Defendants.

86. Defendants breached these duties by failing to exercise the required degree of care in designing, developing, testing, manufacturing, marketing, and distributing hearing protection devices in a manner to provide the specified level of hearing protection.

87. The damages suffered by Plaintiffs were or should have been reasonably foreseeable to Defendants.

88. Plaintiffs were damaged by Defendants' conduct, including but not limited to damage to their hearing.

89. Defendants' breaches are a direct and proximate cause of the injuries and damages suffered by Plaintiffs in an amount not yet fully determined. Plaintiffs are entitled to recover damages and other relief as available, at law or equity, as a direct and proximate result of Defendants' conduct.

## PRAYERS FOR RELIEF

**WHEREFORE,** the Plaintiffs respectfully request that this Honorable Court grant judgment as follows:

1. Entry of judgment in favor of Plaintiffs on all Counts;
2. Award the Plaintiffs damages in an amount to be determined at trial, plus interest, and costs; and
3. Grant such other and further relief as is appropriate and just.

## REQUEST FOR JURY TRIAL

The Plaintiffs request a trial by jury on all Counts in this Complaint so triable.

Respectfully submitted,
**TYSON ERDMANN, JOHN KING,**
**ROBERT WILLIAMSON,**
**SEAN MURPHY,**
**KENNETH GILMORE,**
**TRAVIS SYBESMA,**
**WILLIAM DUGGAN, IVAN GILL,**
**SALVATORE RAO, SCOTT CANINO,**
**and HANS MEASLEY,**

By their Attorneys,

*/s/Gregory J. Aceto*
Gregory J. Aceto (BBO # 558556)
aceto@acetolegal.com
Kinley H. Guerino (BBO #713174)
kguerino@acetolegal.com
**ACETO, BONNER & COLE, P.C.**
Two Oliver Street, Suite 601
Boston, MA 02109
Tel: (617) 728-0888
Fax: (617) 338-1923

Dated: August 27, 2024